**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| IHOP RESTAURANTS LLC, a Delaware limited-liability company; and IHOP FRANCHISOR LLC, a Delaware limited-liability company, | )<br>)<br>)<br>) |
| Plaintiffs, | ) |
| vs. | ) Civil Action No. 17-00570-KD-M |
| MOEINI CORPORATION, | ) |
| Defendant. | ) |

# ORDER

This action is before the Court on the Complaint, Motion for Preliminary Injunction, and Brief in support filed by Plaintiffs IHOP Restaurants, LLC and IHOP Franchisor, LLC (IHOP), the response filed by Defendant Moeini Corporation, and IHOP's reply (docs. 1-3, 12,15). The Court heard the parties on January 29 and 30, 2018. Upon consideration of the motion, response and reply and the evidence presented at the hearing, and for the reasons set forth herein, the Motion for Preliminary Injunction is GRANTED.

I. <u>Factual and procedural background</u>

Defendant IHOP Franchisor is a franchisor of nationally and internationally recognized restaurants with a system of approximately 400 franchisees operating over 1,600 restaurants (doc. 3-1; IHOP Senior Manager of Franchise Development hearing testimony). Defendant IHOP Restaurants has adopted and used in interstate commerce and licensed to IHOP Franchisor and indirectly to authorized franchisees certain trademarks (the Marks), which have been

registered with the United States Patent and Trademark Office, in connection with the operation of IHOP restaurants (doc. 3-1, p. 3-4).

Mehdi Moeini began working with IHOP corporation in 1996. After working his way up to a management position, Moeni purchased his first IHOP restaurant franchise in 2004. Moeini Corporation was formed in 2006 and now owns or operates five IHOP restaurants. Two restaurants are located in Florida and three are located in Alabama.

On November 5, 2010, Moeini and IHOP executed the Franchise Agreement for the restaurant located at 1605 South McKenzie Street, Foley, Alabama. The agreement was later assigned to Moeini Corporation. The parties agreed to an initial term of twenty years after the restaurant opened (doc. 3-2, Exhibit 1). On February 17, 2015, Moeini Corporation and IHOP executed the Franchise Agreement for the restaurant located at 4375 Rangeline Road, Mobile, Alabama. The parties agreed to an initial term that would expire on November 13, 2027 (doc. 3-2, Exhibit 3). On March 13, 2015, Moeini Corporation and IHOP executed the Franchise Agreement for the restaurant located at 30179 Eastern Shore Court, Spanish Fort, Alabama. The parties agreed to an initial term of twenty years after the restaurant opened (doc. 3-2, Exhibit 4).

IHOP, through the Franchise Agreements licensed Moeini Corporation to use the IHOP Marks to identify the goods and services in the three franchised IHOP restaurants. The Marks distinguish IHOP and its franchisees from others who are not authorized or licensed to use the Marks. To insure uniformity of operation and protection of the Marks, the Franchise Agreements also require Moeini Corporation to strictly comply with IHOP's standard operating procedures, policies and rules, etc., set forth in the Franchise Agreements or in operations manual or operations bulletins. *See* Franchise Agreements § 10.03, captioned "Compliance with

Franchisor's Specifications", § 10.05, captioned "Compliance with Applicable Law and Operations Bulletins".   The operations bulletins are defined to "mean the Franchisor's Operations Manual, and all bulletins, notices, and supplements thereto, and all ancillary manuals, specifications and materials, as the same may be amended and revised from time to time." Franchise Agreements § 1.02.  These documents are made available to IHOP franchisees through the IHOP password protected website and apply to all aspects of operating an IHOP restaurant.

Section 10.05 sets forth, in relevant part, as follows:

> Franchisee shall operate the Franchised Restaurant in strict compliance with all Applicable Laws and with the standard procedures, policies, rules and regulations established by Franchisor and incorporated herein, or in Franchisor's Operations Bulletins. Such standard procedures, policies, rules and regulations established by Franchisor may be revised from time to time as circumstances warrant, and Franchisee shall strictly comply with all such procedures as they may exist from time to time as though they were specifically set forth in this Agreement and when incorporated in Franchisor's Operations Bulletins the same shall be deemed incorporated herein by reference. By way of illustration and without limitation, such standard procedures, policies, rules and regulations may or will specify accounting records and information, payment procedures, specifications for required supplies and purchases, including Trademarked Products, hours of operation, advertising and promotion, cooperative programs, specifications regarding required insurance, minimum standards and qualifications for employees, design and color of uniforms, menu items, methods of production and food presentation, including the size and serving thereof, standards of sanitation, maintenance and repair requirements, specifications of furniture, fixtures and equipment, flue cleaning, and fire prevention service, appearance and cleanliness of the premises, accounting and inventory methods and controls, forms and reports, and in general will govern all matters that, in Franchisor's judgment, require standardization and uniformity in all IHOP Restaurants. Franchisor or its Affiliate will furnish Franchisee with Franchisor's current Operations Bulletins upon the execution of this Agreement.

Franchise Agreements § 10.05.

To ascertain whether an IHOP franchised restaurant is in compliance with the standards set out in the operations bulletins or policy manuals, IHOP's franchise business consultants perform periodic unannounced operations evaluation (OEs) (except in certain training and instruction circumstances) whereby its franchise business consultants will evaluate the franchisee's restaurant. (IHOP Division Vice President hearing testimony). The franchise business consultants rate all aspects of restaurant operation and during the relevant time period, 80% compliance on the OE is a passing score. IHOP also retains third party contractors, in this instance Ecosure, that periodically inspect food safety and cleanliness and provide an operations assessment report (OAR). As with the OEs, the inspections are unannounced and 80% compliance would pass the inspection.

At the end of 2016, Moeini Corporation lost 19 employees from the Alabama restaurants. Included were the district manager and two IHOP certified managers who left within a month. The managers then recruited other managers and employees from the restaurants. Moeini Corporation attempted to find new qualified employees to manage and work at the restaurants, but the attempt was not met with great success.

Immediately, the three restaurants began to experience deficiencies in operation [1] All three restaurants failed the OEs conducted in December 2016 (doc. 3-1, p. 9; 11). All three restaurants passed the announced OEs for February 2017, but then failed the OEs for June and

---

[1] Significant deficiencies were found in several areas including equipment maintenance, conditions of the building, food safety, compliance with IHOP recipes and food preparation procedures, cleanliness, sanitations, and operating procedures for guest services.

August 2017 (Id.)[2]  Also, the Spanish Fort IHOP failed the OARs conducted on August 1, 2017 (doc. 3-1, Exhibit 15).[3]  The Mobile IHOP failed the OARs conducted on July 28, 2017 (doc. 3-1, Exhibit 17).[4]  The Foley IHOP failed the OARs conducted on June 22, 2017 (doc. 3-1, Exhibit 18).[5]

Additionally, during 2017, IHOP received 305 customer complaints regarding these three restaurants, which greatly exceeded the national norm for IHOP restaurants. (*See* Subsection B). The complaints covered many aspects of the restaurants' operations, but of primary concern to IHOP were the complaints related to food preparation, food service, food storage, food safety, cleanliness and sanitation.  IHOP's Division Vice President testified that the restaurants licensed to Moeini Corporation had the highest number of complaints in the IHOP system.

If a franchisee commits a material breach of the franchise agreement, IHOP must provide written notice of the default and a period of time to cure the material breach. *See* Franchise Agreements § 12.01 "Right of Termination after Notice of Default." If the franchisee fails to cure within the time period, then the franchise agreement terminates at IHOP's election without further notice or opportunity to cure. *Id.*  At this point, the franchisee must, pursuant to the franchise agreements, discontinue use of the IHOP Marks and not operate the restaurants in any

---

[2] IHOP set 80% as a passing score for the OEs and OARs.  Generally, the three restaurants scored between 54.9% and 70.8% (doc. 3-4, p. 19-20).

[3] Previously, the Spanish Fort IHOP had passed the assessments in April, July and October of 2016 (Moeini Corporation's Hearing Exhibit 7).

[4] Previously, the Mobile IHOP had passed the assessments in February and July 2016 (Moeini Corporation's Hearing Exhibit 12).

[5] Previously, the Foley IHOP had passed the assessments in April and December 2016 (Moeini Corporation's Hearing Exhibit 9).

manner that would give the public the impression that the restaurant was authorized or licensed by IHOP.

On June 22, 2017, IHOP wrote Moeni Corporation that the three Alabama restaurants were rated as "F" on IHOP's operation rating system.[6] IHOP pointed out two primary factors that contributed to the rating: The failure to obtain Certified General Managers at the Spanish Fort and Mobile restaurants within the time frame provided and failure of the Corporate owner or its District Manager to visit the restaurants. IHOP stated that it would send consultants to work with Moeini Corporation to improve the restaurants. (IHOP Hearing Exhibit 42).

On August 4, 2017, IHOP wrote Moeini Corporation that the "results of your Operations are alarming and the Guest Complaints are the highest in the IHOP system. Additionally, your OAR results … are below IHOP standards[.]" (IHOP Hearing Exhibit 43). Again, IHOP offered assistance to improve the three restaurants. The letter also indicated that IHOP understood that Moeini Corporation was pursuing the sale of its IHOP locations, but to date no sale was indicated. (Id.)

On August 23, 2017, IHOP sent Moeini Corporation a notice of default letter (doc. 3-4, p. 19-20). IHOP notified Moeini Corporation that it had breached its "obligations under Section 10.05 of the respective Franchise Agreements" because it had failed to "operate the Restaurants in compliance with the standard procedures, policies, rules and regulations established by IHOP" as shown by the failing scores (Id., p. 20).

IHOP stated as follows:

---

[6] At the hearing, IHOP's Division Vice President testified that in 2017 the rating was based on the operations evaluations (40%), guest relations and normalized guest complaints (10%), operational assessments (20%) and health department inspections (20%), for a 90% scale.

> Pursuant to Section 12.01, you are hereby notified of your default of the Franchise Agreements, and of IHOP's intent to terminate all 3 of your Franchise Agreements if you fail to cure within 30 days of receipt of this Notice. IHOP hereby demands that you fully comply with all terms and conditions of the Franchise Agreements and pass the next OEs for each restaurant to cure.

(Id.).

All three restaurants failed the OEs conducted in September 2017 (doc. 3-1, p. 8). The Foley IHOP and Spanish Fort IHOP were inspected on September 19, 2017 and the Mobile IHOP was inspected on September 20, 2017. As of late September 2017, after the expiration of the 30-day period to cure, Moeini Corporation had not presented IHOP with any evidence that it had cured the material breach at any of the restaurants.

On September 27, 2017, IHOP sent Moeini Corporation a written notice of termination of the three Franchise Agreements (doc. 3-4, p. 22-23). IHOP notified Moeini Corporation that as of September 20, 2017, it had failed to cure the defaults as to the Mobile restaurant and that as of September 19, 2017, it had failed to cure the defaults as to the Foley and Spanish Fort restaurants. The OEs performed at each restaurant on those dates resulted in a failing score.

IHOP notified Moeini Corporation as follows:

> On August 23, 2017, you were sent a notice of default for IHOP #2134, IHOP #2093, and IHOP #4490, due to multiple Operational Evaluations ("OE") and OAR failures as to each of the Restaurants, which were detailed in that letter. You are in material breach of your obligations under Section 10.05 of the respective Franchise Agreements to operate the Restaurants in compliance with the standard procedures, policies, rules and regulations established by IHOP for the reasons set forth above.
> . . .
>
> Your failure to cure the defaults as to IHOP #2134, IHOP #2093, and IHOP #4490 constitutes grounds for termination of the respective Franchise Agreements pursuant to Section 12.01(b). Therefore, your Franchise Agreements are terminated effective October 27, 2017.

(Doc. 3-4, p. 23).

IHOP also demanded that Moeini Corporation "de-brand and de-identify" all three restaurants "within 60 days of receipt of [the] letter, in accordance with your obligations under the Franchise Agreements, including section 16.02." (Id.).

IHOP continued to inspect the restaurants, for food safety and cleanliness, after the September 27, 2017 notice of termination because the IHOP Marks were still being used at the restaurants. The Mobile IHOP failed the OARS on September 29, 2017 (Moeini Corporation's Hearing Exhibit 11). The Spanish Fort IHOP passed the OARs on October 6, 2017 (Moeini Corporation's hearing Exhibit 1). The Foley IHOP passed the OARS assessments on October 18, 2017 (Moeini Corporation's Hearing Exhibit 8).

During October 2017, Moeini Corporation presented one potential buyer to IHOP. Upon interview, IHOP determined that the buyer was not qualified. Another potential buyer revoked the letter of intent.

On October 26, 2017, the day before the Franchise Agreements would effectively terminate, Moeini Corporation filed a Chapter 11 bankruptcy action. On December 6, 2017, the Bankruptcy Court granted IHOP's motion for relief from the automatic stay.

In December 2017, the Division Vice President instructed two franchise business consultants to perform OEs at the three restaurants. However, Moeini Corporation denied access (doc. 3-1, p. 15-16). Also, on December 5, 2017, the Mobile IHOP failed the OAR (doc. 3-1, Exhibit 16). On December 11, 2017, the Spanish Fort IHOP failed the OAR (doc. 3-1, Exhibit 14). Also, on December 11, 2017, an Ecosure representative was denied access to the Foley IHOP to conduct an OAR, which resulted in an automatic fail rating (doc. 3-1, p. 12).

IHOP filed this action on December 29, 2017. IHOP alleges breach of the Franchise Agreements because Moeini Corporation failed to comply with IHOP's policies and procedures and operations bulletins and failed to perform contractual obligations after notice of termination of the Franchise Agreements. IHOP alleges trademark infringement pursuant to 15 U.S.C. § 1114 of the Lanham Act for continuing use of IHOP's marks for the three restaurants, without IHOP's permission, after the Franchise Agreements had been terminated (doc. 1). IHOP also filed a motion for preliminary injunction which is now before the Court (doc. 3).

II. Discussion

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)); *McDonald's Corporation v. Robertson,* 147 F. 3d 1301, 1307 (11th Cir. 1998) (same). "A preliminary injunction is an 'extraordinary and drastic remedy' and should not be granted unless 'the movant clearly establishe[s] the "burden of persuasion" as to each of the four prerequisites.'" *FF Cosmetics FL, Inc.*, 866 F.3d at 1298 (quoting *McDonald's Corp.*, 147 F.3d at 1306).

A. Likelihood of success on the merits

To prevail on its Lanham Act trademark infringement claim, IHOP "must show that its mark was used in commerce" by Moeini Corporation without IHOP's "consent and that the

9

unauthorized use was likely to deceive, cause confusion, or result in mistake." *McDonalds Corp. v. Robertson,* 147 F. 3d. 1301, 1307 (11th Cir. 1998) (citation omitted). The "Lanham Act's requirement that a franchisor demonstrate that unauthorized trademark use occurred to prevail on the merits of a trademark infringement claim against a franchisee necessitates some type of showing that the franchisor properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the unauthorized use of trademarks by the former franchisee." *Id.* Accordingly, the Court first looks to whether IHOP has made a sufficient showing that Moeini Corporation breached the Franchise Agreements and that the Franchise Agreements were properly terminated. If they were, then IHOP is likely to succeed on the merits of its claim that Moeini Corporation's continued unauthorized use of the IHOP Marks violates the Lanham Act.

The three Franchise Agreements contain a choice of law provision for the application of California law (doc. 1, p. 12). In California, the "elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Finato v. Keith Fink & Assocs.*, 2017 WL 3075510, at *2 (C.D. Cal. May 17, 2017) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115, 1121 (2011)). Under California law, if a franchisee breaches a franchise agreement, the franchisor may terminate the franchise agreement and prevent the franchisee from utilizing the franchise. *Jay Bharat Developers, Inc. v. Minidis*, 167 Cal. App. 4th 437, 444, 84 Cal. Rptr. 3d 267, 272 (2008) ("Once appellants breached the [Master Franchise Agreement], respondents could terminate that franchise agreement and prevent appellants from utilizing the Red Brick Pizza franchise.")

According to the terms of the Franchise Agreements, when a material breach occurs, IHOP has the right to terminate the Franchise Agreements if, after notice and an opportunity to cure, Moeini Corporation fails to timely cure the material breach. *See* Franchise Agreements § 12.01. In relevant part, as defined and applied in the Franchise Agreements, "material breach" includes the "failure of Franchisee to comply with any other material obligation of Franchisee under the agreements, including failure to comply with Franchisor's Operations Bulletins as described in paragraph 10.05." *See* Franchise Agreements § 12.01. Section 10.05 states that the franchisee Moeini Corporation "shall operate the Franchised Restaurants in strict compliance with all Applicable Laws and with the standard procedures, policies, rules and regulations established by Franchisor and incorporated herein, or in Franchisor's Operations Bulletins." *See* Franchise Agreements § 10.05. The IHOP policy manuals and operations bulletins include the policies and procedures for operating an IHOP restaurant including the policies and procedures for maintaining IHOP's standards of food safety, food preparation, sanitation and cleanliness at the restaurants.

The OEs, OARs, and the customer complaints significantly support IHOP's position that Moeini Corporation failed to strictly comply with IHOP's operations bulletins, as defined in § 1.02, and thus committed a material breach of the Franchise Agreements. Moreover, and importantly, repeated violations of food safety standards constitute a material breach of a restaurant franchise agreement. *See McDonalds Corp.,* 147 F. 3d at 1309. The corporate representative Mehdi Moeini's testimony that he disagreed with <u>certain</u> findings on the OEs does not change the fact there were <u>many</u> food safety standards that were not strictly observed as required.

The Franchise Agreements set out a seven-day or ten-day period to cure the material breach. *see* Franchise Agreements § 12.01. However, consistent with the provision that IHOP may allow additional time to cure as it "may specify in the notice of default." Franchise Agreements § 12.01. IHOP gave Moeini Corporation thirty days to cure after receipt of the August 23, 2017 notice of default letter, or until late September 2017. The only evidence as to the condition of the restaurants during the cure period came from the three failed OEs of September 19 and 20, 2017.

Now, Moeini Corporation argues that the Franchise Agreements were not properly terminated because IHOP's franchise business consultant conducted the OEs before the 30-day period expired, and therefore, Moeini Corporation was not allowed the full 30 days to cure before IHOP declared a material breach.[7] Although Moeini testified at the hearing that the plan was to cure and at the same time, try to sell the restaurants,[8] there was no evidence of cure of the material breach during the 30-day time period or before the October 27, 2017 Franchise Agreement termination date. And, Moeini testified that at the end of October, he requested another 30 days to cure.

Moeini testified at the hearing that many of the low scores were the result of unreasonable inspections or assessments. He stated that during the September 2017 evaluations at the Spanish Fort and Mobile IHOP's, he objected to many of the franchise business

---

[7] The Franchise Agreements for the Mobile and Spanish Fort IHOPs required Moeini Corporation to "provide evidence of such remedy to" IHOP (doc. 3-2, p. 94, 151). The Franchise Agreement for the Foley restaurant did not contain this requirement (doc. 3-2, p. 33).

[8] IHOP's Senior Manager for Franchise Development testified that she spoke with Moeini soon after the notice of termination was sent. In that conversation, he said that Moeini Corporation needed six months to cure the defaults or one year to sell the franchises.

consultant's decisions regarding the cleanliness, food safety, and other aspects of the restaurants. However, disagreement with the franchise business consultant's evaluations as to certain specific findings does not diminish the overall, systemic failures of the three restaurants to strictly comply with IHOP's standards as indicated by the OEs and OARs,

IHOP has made a sufficient showing that they are likely to succeed in proving that the Franchise Agreements were properly terminated and that Moeini Corporation's continued use of IHOP's Marks after the Franchise Agreements were terminated was unauthorized.[9] Thus, the Court next looks to whether IHOP can show that it is likely to succeed on the merits of its Lanham Act claim for infringement. To do so, IHOP "must show that its mark was used in commerce" by Moeini Corporation without IHOP's "consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake." *McDonalds Corp.,* 147 F. 3d. at 1307. IHOP has presented sufficient evidence that they are likely to succeed in proving that Moeini Corporation is using the Marks at the three IHOP restaurants, i.e., in commerce, after the Franchise Agreements were terminated.

As to whether the unauthorized use is likely to deceive, cause confusion, or result in mistake, IHOP presented evidence of post-termination customer complaints and reviews on social media which indicate that that the public continues to believe that these three restaurants are affiliated with the IHOP franchise. Additionally, Moeini admitted at the hearing that he

---

[9] Section 16.02 of the Franchise Agreements sets out the obligations of the franchisee when the franchise has been terminated and specifically states that the franchisee shall discontinue use of IHOP's trademarks and shall not "operate or do business under any name or in any manner that might tend to give the general public the impression that it is either directly or indirectly associated, affiliated, franchised or licensed by or related to, the IHOP Restaurant system, and shall not, either directly or indirectly, use any name, logotype, symbol or format confusingly similar" to that of IHOP.

13

continued to use the IHOP Marks and that he expected the customers would believe that his restaurants were IHOP restaurants. As explained in *Burger King v. Mason*, "[c]ommon sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks." 710 F. 2d 1480, 1492 (11th Cir. 1983).

Based upon the evidence before the Court, IHOP has shown substantial likelihood of success on the merits of it Lanham Act claim. Therefore, the Court finds that IHOP has met its "burden of persuasion" as to this prerequisite. *FF Cosmetics FL, Inc.*, 866 F.3d at 1298 ("A preliminary injunction is an 'extraordinary and drastic remedy' and should not be granted unless 'the movant clearly establishe[s] the "burden of persuasion" as to each of the four prerequisites.'")

B. <u>Irreparable injury</u>

In addition to the OEs and OARs showing underperformance, IHOP presented evidence and testimony regarding significant customer complaints including complaints related to sanitation, food preparation, cleanliness of the restrooms, insects, and food safety, and negative reviews on social media or internet-based restaurant review websites. IHOP's Division Vice President testified that IHOP utilized a normalized guest complaint score which is the number of complaints per 10,000 guest checks without regard to the volume of sales for the restaurants or the length of time necessary for a restaurant to generate 10,000 guest tickets. The average number of complaints was 2.9 normalized guest complaints per restaurant per month. For the year of 2017, the three restaurants at issue received 305 guest complaints and averaged between

30 and 50 normalized guest complaints per 10,000 guest tickets. The Division Vice President testified that this was the highest number of complaints in the IHOP system.

IHOP has expended substantial sums for developing, advertising and promoting its Marks. As a result, IHOP has a valuable reputation and goodwill among the public. The Marks are now associated with IHOP. They are distinctive, recognizable, and engender the goodwill upon which the IHOP franchisees depend. The complaints demonstrate that these three IHOP franchised restaurants are harming the reputation and goodwill that IHOP has developed. Importantly, as the Division Vice President testified at the hearing, the food safety concerns put the IHOP brand at great risk and if there is a food-safety related issue and guests are infected, the impact to the IHOP brand could be catastrophic, as well as the possible harm to the public.

Moreover, Moeini Corporation denied access to the restaurants for assessments and evaluations in December 2017. Therefore, IHOP has no method to monitor the restaurants and protect its brand. As stated in *IHOP Restaurants, LLC v. Len-W Foods, Inc.*, "IHOP suffers harm because the consuming public continues to believe that" these three restaurants are "authorized by IHOP. Thus, IHOP loses goodwill in the eyes of the public for each day" these restaurants continue their "poor performance." 2015 WL 10960933, *8 (N.D. Ga. Sept. 18, 2015).

Based upon the evidence before the Court, IHOP has shown that it will suffer irreparable injury unless the injunction issues. Therefore, the Court finds that IHOP has met its "burden of persuasion" as to this prerequisite. *FF Cosmetics FL, Inc.*, 866 F.3d at 1298.

C. <u>Whether the injury to IHOP outweighs the damage to Moeini Corporation</u>

The Court acknowledges that Moeini Corporation has filed a Chapter 11 bankruptcy, has tried to improve the restaurants performance by recruiting new managers and employees, and has

actively sought a purchaser for the franchises. Moreover, Moeini invested a significant amount of money to purchase the franchises, which he will not recover. Thus, Moeini Corporation will suffer harm if the injunction issues and it is forced to de-brand the three restaurants. However, as discussed in Subsection B, and based upon the evidence before the Court, IHOP has shown that the injury it will sustain if Moeini Corporation continues to use IHOP Marks with respect to these three restaurants outweighs the damage to Moeini Corporation. Therefore, the Court finds that IHOP has met its "burden of persuasion" as to this prerequisite. *FF Cosmetics FL, Inc*. 866 F.3d at 1298.

    D. <u>The public interest</u>

IHOP presented documentation of systemic low scores in the OEs and the OARs and evidence of complaints from guests that reflect similar deficiencies as indicated in the OEs and OARs. The documentation was supported by the testimony of IHOP's Division Vice President and the franchise business consultant, who testified as to critical product safety violations involving pests, temperature control for food storage, and cleanliness of food preparation equipment and food service equipment. Although Moeini Corporation presented testimony that some of the OE's and OAR's may not have accurately reflected the cleanliness or food safety protocols in place in the three restaurants and that the restaurants passed state health inspections, IHOP presented convincing evidence that customer safety was at risk at each of these restaurants.

Based upon the evidence before the Court, IHOP has shown that entering an injunction would not be adverse to the public interests. Therefore, the Court finds that IHOP has met its "burden of persuasion" as to this prerequisite. *FF Cosmetics FL, Inc.*, 866 F.3d at 1298.

III. Conclusion

Each of the four prerequisites have been met. Therefore, IHOP's Motion for Preliminary Injunction is GRANTED. Accordingly, as to the three IHOP restaurants at issue in this action, Defendant Moeini Corporation is enjoined, as follows:

a. Defendant Moeini Corporation is enjoined from
(1) using the IHOP Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the IHOP Marks;
(2) otherwise infringing the IHOP Marks or using any similar designation, alone or in combination with any other component;
(3) passing off any of its goods or services as those of IHOP or IHOP's authorized franchisees;
(4) causing likelihood of confusion or misunderstanding as to the source or sponsorship of its business, goods, or services;
(5) causing likelihood of confusion or misunderstanding as to its affiliation, connection, or association with IHOP and IHOP's franchisees or any of IHOP's goods or services; and
b. Defendant Moeini Corporation shall file with the Court and serve upon IHOP's counsel within twenty-one (21) days of entry of this preliminary injunction and order, a written report, under oath, setting forth in detail the manner in which it has complied with such injunction or order.

DONE and ORDERED this the 7th day of February 2018.

                          s/ Kristi K. DuBose
                          KRISTI K. DuBOSE
                          CHIEF UNITED STATES DISTRICT JUDGE